FILED
BILLINGS DIV.

2009 AUG 19  AM 10 04

PATRICK E. DUFFY, CLERK
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Cause No. CR 03-78-BLG-RFC |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING § 2255 MOTION |
| | ) | AND VACATING AMENDED |
| BENJAMIN McCHESNEY, | ) | JUDGMENT |
| | ) | |
| Defendant/Movant. | ) | |

This case is before the Court on Defendant/Movant Benjamin McChesney's
motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255.
McChesney is a federal prisoner proceeding, by his choice, pro se. Order re: Counsel
(doc. 504); McChesney's Decision re: Counsel (doc. 507). Standby counsel assisted
him at the evidentiary hearing.

On August 15, 2008, some of McChesney's claims were denied on the merits.
On October 8, 2008, his motion for the appointment of new counsel was granted. The
parties conducted discovery and, on April 30, 2009, submitted briefs on the merits of

the remaining claims. On May 19, 2009, the United States filed a response brief. On

May 27, 2009, three more claims were dismissed. Thereafter, McChesney asked to

be permitted to proceed pro se. After being advised of the dangers and disadvantages

of self-representation, he elected to represent himself.

On July 31, 2009, an evidentiary hearing was held. At the conclusion of the

hearing, certain depositions and affidavits were admitted into evidence in their

entirety. The parties were offered an opportunity to submit further briefing. Both

parties declined.

## I. Background

On May 23, 2003, McChesney was charged along with ten other defendants[1]

in a thirty-count Indictment alleging drug and money laundering crimes. McChesney

was named in Count 1, conspiracy to possess more than 500 grams of

methamphetamine with intent to distribute, and Counts 4, 8, and 9, which charged

substantive offenses. He was also named in all the other counts on a Pinkerton theory

of liability.[2] Indictment (doc. 1). On August 26, 2003, Mark Errebo was appointed

---

[1] Michael McChesney, Benjamin McChesney's brother, was also a defendant. In this Order, the name "McChesney," used without a first name, means Benjamin McChesney. Consistent with the trial testimony, when the brothers are mentioned together, they are called "Mike" or "Ben."

[2] Pinkerton v. United States, 326 U.S. 640, 647 (1946) ("If [the overt act element in a conspiracy charge] can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense.").

to represent him.  Order (doc. 105).

Trial was held in February 2004.  Spencer initially said he knew McChesney over a "very short period of time[,] I'd say maybe from the middle of summer of 2001 till the end of the summer," and sold him a total of about four ounces of meth.  Trial Tr. Day 3 at 571:11-17.  After reviewing the 302 of his debriefing, Spencer said he sold another ounce to McChesney sometime in March-May of 2001.  Id. at 573:6-575:25.

Spencer said he sold McChesney an ounce of meth at Doc & Eddy's in midsummer 2001, after McChesney called him to arrange a meeting.  Spencer said he generally charged $800 to $1000 an ounce.  He also said that McChesney told him he intended to sell Fawn Thompson some of the meth he bought at Doc & Eddy's. Spencer was arrested in September 2001 and said McChesney owed him a few hundred at that time.  After a look at his 302, Spencer said McChesney owed him $600.  Spencer did not keep accounts and just remembered what people owed him. Trial Tr. Day 4 at 692:15-694:15, 718:3-25, 722:10, 722:25-723:1, 728:25-729:10, 730:3-25.

Spencer also knew McChesney worked "at a warehouse-type building" off Montana Avenue in Billings.  Spencer said he sold McChesney half an ounce on one occasion there.  At that time, Spencer was accompanied by McChesney's co-

defendant Larry Hodges. Trial Tr. Day 4 at 694:16-695:23. Hodges testified but did not identify or say anything about McChesney.

Fawn Thompson testified that she sold meth to McChesney a few times. On one occasion, she bought an eight-ball from him for $100, "very cheap." Trial Tr. Day 6 at 1306:15-1308:24. In her initial debriefing, she had said she bought a quarter-gram from McChesney two or three times. Id. at 1328:15-1329:12. She explained the discrepancy[3] by saying she was trying, in her first debriefing, to say as little as she could against McChesney. Id. at 1332:8-13.

Lonnie Vandersloot testified that he bought two ounces of methamphetamine at $700 each from McChesney in September 2001, after Spencer was arrested. McChesney told him he got the meth from his brother Mike. Trial Tr. Day 6 at 1360:15-1363:12. Vandersloot agreed that Mike's meth, on the occasion when Ben sold it to Vandersloot, must have come from someone other than Spencer. Id. at 1397:2-1399:4. Asked when he first met McChesney, Vandersloot said, "[w]hen he got out of prison." Id. at 1345:25-1346:1.

McChesney was the last witness. He denied buying meth from Spencer and denied selling any to Thompson or Vandersloot.[4] Trial Tr. Day 6 at 1469:7-1470:20,

---

[3] An eight-ball is an eighth of an ounce, roughly 3.5 grams.

[4] There was some discussion of Vandersloot's alleged "confession" to the McChesney brothers that he murdered his aunt and uncle. Charles and Bonnie Vandersloot were murdered at

1471:13-19, 1471:20-1472:8. He said he owed Spencer $500 (not $600) because he borrowed money from Spencer when he was "short on . . . rent one time." Id. at 1470:21-1471:2. On cross-examination, McChesney admitted using meth but did not say where it came from. Id. at 1478:17-1482:17.

The jury acquitted McChesney on Counts 4, 8, and 9 but convicted him on Count 1 and on Count 13, a Pinkerton count alleging that co-conspirators Rieta, Bramble, and Mike McChesney possessed about fourteen pounds of methamphetamine with intent to distribute in late October or early November, 2001. Verdict (doc. 225); Indictment at 13.

After the verdicts, McChesney and the United States were asked to brief McChesney's motion for mistrial based on Vandersloot's remark revealing to the jury that McChesney had previously been in prison. Trial Tr. Day 9 at 1727:6-11.

On February 25, 2004, and on April 12, 2004, McChesney filed motions for judgment of acquittal or new trial. Both were denied. Mot. for Acquittal (doc. 230); Mot. to Reconsider (doc. 260); Order (doc. 253); Order (doc. 283).

On June 2, 2004, McChesney was sentenced to serve 120 months in prison, to be followed by five years' supervised release. Re-Sentencing Tr. (doc. 361) at 3:15-

---

their home in Hardin in 1997. Their grandson, Jonathan Wayne Vandersloot, was tried twice but not convicted. The issue of Vandersloot's "confession" came up in his cross-examination, Trial Tr. Day 6 at 1393:9-1394:12, 1403:2-14, and in McChesney's own testimony, id. at 1473:17-1474:16.

4:13, 11:1-5; Am. Judgment (doc. 303) at 2-3.

McChesney appealed. On January 24, 2005, Errebo filed a motion to withdraw. New counsel appeared for McChesney. Ultimately, the appellate panel concluded:

[T]he evidence of B. McChesney's participation, though not ample, was sufficient to establish his requisite slight connection to the conspiracy. When we resolve conflicts in the evidence in the government's favor, the record shows that B. McChesney purchased four ounces of methamphetamine from one of the distributors [Spencer] over the course of several months. On one occasion, B. McChesney told the distributor he planned to resell methamphetamine to another person [Thompson], and, in fact, sold an eighth-ounce of methamphetamine to her. He owed a drug debt to the distributor, which permits the inference that B. McChesney was fronted methamphetamine and thus was a trusted retail outlet of the distributor.

Mem. at 6-7, United States v. McChesney, No. 04-30256 (9th Cir. June 29, 2006)

(unpublished mem. disp.) (doc. 404) (internal citations and quotation marks omitted).

McChesney's convictions were affirmed. Id. at 16.

## II. Remaining Claims

Four claims in the § 2255 motion, A5, A7, B2, and C, remain before the Court.

Two claims, A7 and C, involve an out-of-court statement made by David Spencer to two U.S. Marshals, Deputy Callahan and Deputy Heritage. In the transport van, just after he finished testifying at trial, Spencer said "something to the effect of 'Of all those guys up there on trial, the only one who does not belong is Ben

McChesney. He didn't do anything," Callahan Report (doc. 435 at 2), or "I feel bad for the McChesney guy. Of all those guys he doesn't belong there," Heritage Report (doc. 435 at 3). Claim A7 of McChesney's § 2255 motion alleges that trial counsel Mark Errebo was ineffective because he did not investigate this remark. Claim C alleges that Spencer's statement is newly discovered evidence supporting a motion for new trial. Am. Mot. § 2255 (doc. 421) at 4, 6-7.

Claim B2 involves a different out-of-court statement by Spencer. McChesney alleges that a fellow federal prison inmate, Sharky Williams, told him that Spencer told Williams that he lied about McChesney at trial because the prosecution threatened to indict Spencer's mother, his girlfriend, and his brother if he did not testify against McChesney. Id. at 5.

Finally, Claim A5 alleges that Errebo was ineffective because he failed to ask Spencer whether a $600 debt McChesney owed him was for rent instead of drugs. Id. at 3-4.

## III. Analysis

### A. Claim B2: Prosecutorial Misconduct

At the evidentiary hearing, Spencer testified that he talked to Sharky Williams about McChesney's case. However, Spencer said he did not tell Williams that the prosecution threatened him to induce him to testify falsely. He also said that he

testified truthfully at trial.  Spencer and Seykora both testified that they never met outside the presence of other law enforcement agents and Spencer's attorney.  There is no evidence at all to support McChesney's claim that Spencer was threatened.  Claim B2 is denied.

### B. Claim A5: Ineffective Assistance re: $600 Debt

Strickland v. Washington, 466 U.S. 668 (1984), sets the standards for claims of ineffective assistance of counsel.  First, McChesney must show that counsel's performance fell below an objective standard of reasonableness.  Id. at 687-88.  Second, he must show that he was prejudiced by counsel's errors.  Id. at 693.  Under the first prong, counsel's performance need not be perfect.  It must, however, fall "within the range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970)).  Under the prejudice prong, McChesney must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697.

Errebo testified in his deposition that he did not know what Spencer's answer

would be if he asked whether the $600 debt was for rent. Errebo was also concerned that Spencer might describe a more extensive relationship with McChesney than he already had. Errebo Dep. (doc. 478) at 25:24-26:20. On its face, this was not an unreasonable concern. McChesney has not identified any evidence that could have compelled Spencer to admit that the debt was for rent and was unrelated to drugs. It is axiomatic that a lawyer should never ask a witness a question unless the lawyer knows the answer.[5] Errebo's decision not to ask Spencer about the debt was reasonable.

Moreover, at the evidentiary hearing, Spencer testified that the $600 debt was most likely for marijuana. This is not inconsistent with his trial testimony:

> AUSA Seykora:  How much did Ben McChesney owe
> you for drugs?
>
> Spencer:  $600.

Trial Tr. Day 4 at 722:25-723:1. If Errebo had foolishly asked Spencer whether the money was for rent, Spencer could only have answered that it wasn't.

Neither prong of the Strickland test is met. Claim A5 is denied.

### C. Claims A7 and C: Spencer's Remark to the Marshals

---

[5] Imagine, for instance, that Spencer had said, "No, it was definitely for drugs, I remember, because Ben kept telling me I should give him more meth to sell so he could pay me back faster." Errebo had no way to impeach Spencer if he said that. McChesney himself claims Spencer lied on the stand. Why should Errebo have given him more room to do so?

McChesney claims that Errebo "failed to exercise due diligence in investigating post trial claims that David Spencer had lied about Ben McChesney's involvement during his testimony at trial." Am. § 2255 Mot. (doc. 421) at 4. He also claims that Spencer's remark to the Marshals entitles him to a new trial.

### 1. New Trial

To obtain a new trial, McChesney must show, by a preponderance of the evidence, that a new trial will result in acquittal and that the new evidence could not have been discovered through the exercise of due diligence before trial. United States v. Hinkson, 526 F.3d 1262, 1277-78 (9th Cir. 2008); United States v. Harrington, 410 F.3d 5988, 601 (9th Cir. 2005).[6] "[W]here it is known conclusively at the time of the new trial motion that the evidence presented at trial was false," Hinkson, 526 F.3d at 1278 n.1, a less demanding standard might apply.

Spencer's remark, by itself, does not establish conclusively that Spencer gave false testimony at trial. Spencer did not say, "I feel bad because I lied." At the evidentiary hearing, Spencer affirmed that he told the truth at trial. Therefore, McChesney must show that introduction of the remark at trial would probably result

---

[6] A motion for new trial must be made within three years after the jury's verdict. McChesney wrote a letter to the Court on December 12, 2006, explaining that he had learned of Spencer's remark and intended to file a § 2255 motion or a motion for new trial "soon." McChesney attached to the letter a copy of a letter he wrote to AUSA Seykora on the same date. The letters gave notice of McChesney's intent to seek a new trial and of the evidence on which he would rely. Consequently, the Court believes the limitations period of Rule 33(b)(1) is satisfied.

in an acquittal.

While Spencer was a crucial witness, his remark is not a recantation. In the overall conspiracy – which accounted for more than eighty pounds of methamphetamine – McChesney's involvement was slight. Spencer's testimony was not inconsistent with a colloquial assessment that McChesney "didn't do anything" and didn't "deserve" to be treated as if he were the same as the other defendants. Spencer himself testified that this is what he meant. It is not probable that a jury would interpret Spencer's remark literally to mean that McChesney was not a member of the conspiracy and acquit McChesney. On the contrary, there is a strong probability that the jury would interpret Spencer's remark as his own assessment of the degree of McChesney's moral culpability relative to the other defendants.

Spencer's remark, by itself, is not sufficient to support a new trial. Claim C is denied.

### 2. Counsel's Failure to Investigate

#### a. Performance

There is a factual dispute as to when Errebo learned of Spencer's remark. Errebo says he learned of it after McChesney testified but before the jury began its

deliberations.[7] Errebo testified in some detail that he consulted with McChesney and Mark Parker, Mike McChesney's attorney, and they considered recalling Spencer or calling a Marshal. Errebo Dep. at 29:8-30:17. Errebo decided against it because he "felt that the government's evidence was weak and that [Ben] had a good chance of being acquitted," id. at 30:21-23, and "I didn't think Mr. Spencer did that much harm to my client," id. at 32:20-21.

The Marshals did not recall telling anyone about the remark when Spencer made it. They did not recall telling Errebo about it until he asked them about it, a few months after McChesney's sentencing. Callahan Dep. (doc. 477) at 12:15-14:6; Heritage Dep. (doc. 479) at 11:3-12:11. They recalled telling McChesney about it when he made remark similar to Spencer's while they were transporting him to or from sentencing – "during an official USMS transportation process," Callahan Report at 2. McChesney testified at the evidentiary hearing that the Marshals told him about it when he was in custody, and he told Errebo about it at sentencing. The Marshals and McChesney agree that the conversation leading to disclosure of Spencer's remark occurred as small talk when McChesney was in custody. Callahan Dep. at 8:22-12:1;

---

[7] In his deposition, Errebo testified that the Marshals came to him and told him about Spencer's remark, and he told McChesney. He also said McChesney told him "[there's something up" with the Marshals, he went to the Marshals to check it out, and then he told McChesney what the Marshals said Spencer said. Errebo Dep. at 29:15-30:7. At the evidentiary hearing, he testified that he did not remember whether the Marshals approached him or McChesney.

Heritage Dep. at 8:1-9:25.

McChesney was not in custody until after the jury convicted him. Arrest Warrant (doc. 3); Minutes (doc. 50); Order (doc. 59); Trial Tr. Day 9 at 1727:24-1728:10. Moreover, it is not possible to reconcile the Marshals' depositions, which show they considered Spencer's remark "just routine conversation," Callahan Dep. at 7:14-8:21, or "typical talk that crooks talk about," Heritage Dep. at 6:9-7:25, with the notion that they approached either Errebo or McChesney at trial to tell them of Spencer's remark. Errebo gave a reasonable explanation in his deposition of why he decided not to recall Spencer at trial. Yet the decision could not have been made at trial.[8]

If Errebo learned of Spencer's remark a few months after McChesney's sentencing, as the Marshals suggest, the record shows that Errebo confirmed with the Marshals the fact that Spencer made the remark, Callahan Dep. at 13:3-14:6; Heritage Dep. at 11:2-12:16, but did no more beyond that. If Errebo learned of it at sentencing, as McChesney said at the hearing, there is no indication that Errebo did anything about it apart from confirming it with the Marshals a few months later. The record contains no evidence that Errebo considered contacting Spencer or Spencer's

---

[8] Possibly Errebo is confusing conversation about Spencer's remark to the Marshals with McChesney's desire to ask Spencer about the $600 debt.

attorney to ask Spencer what he meant or that he decided for some reason not to do so. There is no evidence that Errebo considered filing a motion for new trial based on the remark.[9]

Had there been other definitive evidence against McChesney, a reasonable attorney might decide the remark was not worth investigating. But in his deposition, Errebo said he "felt that [McChesney] got a raw deal at trial," Errebo Dep. at 7:11. He explained:

> The verdict infuriates me, frankly. The jury found Ben guilty of none of the substantive counts he was named in but found him guilty of other substantive, of other counts that he wasn't named in. And, you know, if a jury is bending over that far backwards, bending over backwards that far to convict a guy, you know that case was close. . . .
>
> 20/20 hindsight, knowing that Ben would have got convicted? I'd have gone for everything. I would have put Spencer back up there. I'd have put the marshal back up there. Knowing he's going to get convicted?
>
> But looking at it from the perspective that I was, the case was, no offense, Jim, but your case against him was skinny. It was close. It was – I felt that these people were, especially Spencer, I just thought was a terrible witness. He had a terrible memory. He was punch-drunk from drugs, and he – you know, whether he was lying or telling the truth, it didn't matter, he was such a scumball.
>
> And then these other two witnesses didn't get their – especially Fawn Thompson. My recollection of her was her time frame was just totally out of whack. She wasn't in the time frame of the conspiracy, and I think the jury agreed.

---

[9] Errebo says McChesney wanted to pursue the remark on appeal or in a motion for new trial. Errebo Dep. at 35:20-38:14. It was not a matter of record and therefore not an appellate issue.

ORDER GRANTING § 2255 MOTION IN PART AND VACATING AMENDED JUDGMENT / PAGE 14

Id. at 33:6-12, 48:15-49:7.

In sum, Errebo could only have learned of Spencer's remark after trial, after McChesney had been acquitted on the substantive counts against him and convicted only on Count 1 and on a Pinkerton count, Count 13. Errebo knew all the evidence against McChesney and how slight it was. He knew he didn't believe what Spencer said at trial. Spencer's remark presented a rare opportunity to use 20/20 hindsight to his client's advantage. Investigation of the remark would give Errebo a safe opportunity to ask Spencer about the $600 debt, an issue he knew was of pressing concern to McChesney. Errebo Dep. at 25:7-26:20. Even if he discovered additional bad facts, a post-trial investigation could not make his client more guilty. There is no evidence that Errebo considered these things or that he considered investigating Spencer's remark or filing another motion for new trial while the appeal was pending.[10]

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466

_____

[10] McChesney was sentenced on June 2, 2004. According to the evidence before the Court, the latest that Errebo could have learned of Spencer's remark was a few months after sentencing – say, September or October 2004. He moved to withdraw as counsel on January 24, 2005.

U.S. at 690-91. There is no evidence that Errebo made a reasonable professional judgment not to investigate Spencer's remark. The first prong of the Strickland test is met.

### b. Prejudice

To show prejudice, McChesney does not have to show that Spencer lied at trial. He must only show that he was prejudiced by Errebo's failure to investigate. He must show, by a preponderance of the evidence, that if Errebo had investigated Spencer's remark, he would have discovered evidence to support a new trial.

Spencer's testimony at the evidentiary hearing shows what Errebo would have discovered if he had investigated. Spencer did not lie at trial. But, had Errebo asked, Spencer would have told him that he did not "agree" with McChesney to sell drugs in Montana; in other words, Spencer himself did not consider McChesney one of his distributors. Spencer also would have told Errebo that the $600 McChesney owed him was probably for marijuana, not methamphetamine. These two facts make a big difference.

### c. Probability of an Acquittal

In the context of ineffective assistance generally, prejudice is shown if there is a reasonable probability that the outcome of the proceeding would have been different. A reasonable probability is less than a preponderance of the evidence.

Strickland, 466 U.S. at 693-94. Here, however, McChesney cannot succeed if he shows only a reasonable probability that he will be acquitted at a new trial. He must show that Errebo's failure to investigate Spencer's remark deprived him of a new trial. To show that a motion for new trial would have been granted if Errebo had investigated, he must show, by the higher standard of a preponderance of the evidence, that a new trial would result in an acquittal. Hinkson, 526 F.3d at 1278.

At the conclusion of the evidence in the first trial, I took McChesney's Rule 29 motion under advisement. After a careful review of the record, I concluded that there was sufficient evidence of McChesney's participation in the alleged conspiracy. The Ninth Circuit agreed. But those decisions were based on inferences that McChesney was distributing for Spencer.

Clearly, the evidence supports a buyer-seller relationship between Spencer and McChesney, between McChesney and Thompson, and between McChesney and Vandersloot.[11] It also shows some sort of supply-demand relationship between Mike and Ben McChesney. But, after the evidentiary hearing, what is the evidence that McChesney *agreed* with any of these people to distribute methamphetamine to others?

---

[11] The indictment did not allege a marijuana conspiracy, but, at any rate, there is no evidence that McChesney sold or gave marijuana received from Spencer to Thompson or Vandersloot.

McChesney told Spencer he intended to sell some of the meth he bought from Spencer to Thompson. But Spencer also says he did not have an agreement with McChesney regarding resale. Further, the money McChesney owed him was for marijuana, not methamphetamine, so there is no evidence that Spencer "fronted" methamphetamine to McChesney. Spencer did not benefit from McChesney's sale to Thompson because McChesney had already paid Spencer up front. There is no evidence that McChesney received meth from Spencer after that. In light of the new evidence, Spencer's report of McChesney's stated intent proves that *McChesney* contemplated "a crime other than the crime that consists of the sale itself." It does not, by itself, prove "*an agreement* to commit a crime" other than the sale itself. United States v. Lennick, 18 F.3d 814, 819 (9th Cir. 1994) (emphases added).

Spencer's relationship with McChesney is the linchpin of McChesney's conviction. The only other witnesses against McChesney were Vandersloot and Thompson, but their trial testimony did not serve the same function as Spencer's.

Vandersloot testified that the two ounces of meth McChesney sold him came from McChesney's brother Mike. He also testified that Mike must have gotten it from someone other than Spencer, because Spencer was in jail by that time – September 2001, not late October or early November 2001 as alleged in Count 13. McChesney did not tell Vandersloot how he obtained the meth from Mike or explain

why he could sell it to Vandersloot for $200 less than Mike would charge. There is no evidence that Mike and Ben agreed to possess methamphetamine with intent to sell it. The meth could just as well have been stolen from Mike as given or sold by him to Ben; after all, Vandersloot said Ben "didn't want Mike knowing that I was – that he was getting it for me." Trial Tr. Day 6 at 1401:3-4. And Vandersloot testified that he had no resale agreement with Ben. Trial Tr. Day 6 at 1401:9-13.

Thompson said McChesney sold her an eight-ball of methamphetamine on one occasion and she sold him meth on more than one occasion. There is no evidence that McChesney and Thompson had a resale agreement.

Given what Spencer said at the § 2255 evidentiary hearing, there is scant evidence that McChesney "had reason to believe that whatever benefits [he] might get from the conspiracy were probably dependent upon the success of the entire venture." 9th Cir. Model Jury Instr. 8.18; Trial Tr. Day 7 at 1557:1-4. There is scant evidence that McChesney was part of a "big picture" that included Spencer, or his brother Mike, or anyone else. "[M]ere sales to other individuals do not establish a conspiracy to distribute or possess with intent to distribute; rather, the government must show that the buyer and seller had an agreement to further distribute the drug in question." Lennick, 18 F.3d 819 n.4; see also id. at 818-20 nn.5-6; Trial Tr. Day 7 at 1558:22-25 (jury instructions). Likewise, "[t]he sale of large quantities of

controlled substances, without more, cannot sustain a conspiracy conviction." Id. at 819 n.5 (quoting United States v. Lechuga, 994 F.2d 346, 347 (7th Cir. 1993)) (internal brackets omitted).

It is possible that a new jury will construe Spencer's and/or Vandersloot's testimony as evidence of McChesney's participation in a conspiracy. Maybe a jury would consider two ounces a "large quantity" that could only be intended for resale. Maybe a jury will put these scraps of evidence together and come up with a conspiracy conviction. It is more likely that a new jury will acquit him or that the evidence will not be sufficient to support a conviction.

### d. Conclusion

Because the evidence connecting McChesney to the conspiracy at trial was slight, though sufficient, a reasonable defense attorney would have pulled out all the stops to find out what Spencer meant when he said McChesney "didn't do anything." Errebo does not accurately recall what happened and so has not advanced a reasonable strategic explanation for not attempting to investigate. Had Errebo investigated, he would have learned crucial information about Spencer's understanding of his relationship with McChesney as well as the $600 debt. This information, combined with what is already in the trial transcript, casts the evidence of McChesney's participation in a conspiracy in a new light.

ORDER GRANTING § 2255 MOTION IN PART AND VACATING AMENDED JUDGMENT / PAGE 20

The Court's confidence in the verdict against McChesney is undermined. He is entitled to relief on Claim A7 and a new trial on Counts 1 and 13.

Accordingly, IT IS HEREBY ORDERED as follows:

1.   McChesney's motions under 28 U.S.C. § 2255 (docs. 417, 421) are **DENIED** as to Claims A5, B2, and C and **GRANTED** as to Claim A7.

2. The Amended Judgment entered against McChesney on June 4, 2004 (doc. 303), is **VACATED**.

3.   The Clerk of Court shall enter judgment in the civil case in favor of McChesney and against the United States.

4.   Pursuant to the protective order entered on October 15, 2008 (doc. 459), neither the United States nor any law enforcement agent or officer may use any confidential information obtained from McChesney or Errebo in the course of these proceedings against McChesney at a new trial.  The prosecution may not use at trial Errebo's deposition or either Errebo's or McChesney's testimony from the § 2255 hearing.  If the transcript of the § 2255 evidentiary hearing is filed, it must be filed under seal.

5. The following schedule will govern all pretrial procedures in this case:

| | |
|---|---|
| Trial on Counts 1 and 13: | **October 19, 2009, at 9:00 a.m. Counsel in chambers at 8:00 a.m.** James F. Battin Courthouse Billings, Montana |
| Discovery: | **September 3, 2009** |
| Pretrial Motions excluding motions in limine: | **September 23, 2009** |
| Responses: | **October 5, 2009** |
| Motion for Change of Plea: | **October 9, 2009** |
| Jury Instructions, Trial Briefs, and Trial Notebooks | **October 12, 2009** |
| **ANY MOTIONS TO CONTINUE TRIAL\* (In Order to Allow the Jury Clerk Sufficient Time to Notify Prospective Jurors); failure to comply may subject counsel to sanctions.** | **5 court days prior to trial** |
| Plea Agreement: | **48 hours prior to Change of Plea hearing** |

This schedule must be strictly adhered to by the parties.

6. Lisa Bazant is **HEREBY APPOINTED** new counsel for McChesney. Ms.

Bazant can be contacted at: P.O. Box 1832, Billings, MT 59103, telephone 406-696-

---

\*All motions to continue filed by defense counsel must include a suggested future date or time frame for the Court's use in resetting the trial. In addition, defense counsel is directed to notify the Court in the motion whether the defendant is in custody.

2197. The Court will not entertain any motions from McChesney except through new

counsel.

DATED this __19__ day of August, 2009.

Richard F. Cebull, Chief Judge
United States District Court